UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRITTNEY B.,[1]

        **Plaintiff,**

    v.
                                **Civil Action 2:22-cv-3908**
                                **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Brittney B. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review

of a final decision of the Commissioner of Social Security ("Commissioner") denying her

application for Social Security Period of Disability benefits and Disability Insurance benefits.

This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 12), the

Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF

No. 9). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED,** and the

Commissioner's decision is **AFFIRMED**.

### I.      BACKGROUND

Plaintiff protectively filed her application for Title II disability insurance benefits on

March 18, 2019, alleging that she became disabled on August 23, 2018. After Plaintiff's

applications were denied at the initial and reconsideration levels, an administrative law judge

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other
disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

("ALJ") held a telephone hearing on September 10, 2021, and issued an unfavorable

determination on October 12, 2021. That unfavorable determination became final on August 31,

2022, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. Plaintiff asserts two contentions

of error: (1) the ALJ's RFC determination that Plaintiff could perform light work is not

supported by substantial evidence; and (2) the ALJ erred in finding that Plaintiff does not have

any severe mental impairments. (Pl.'s Statement of Errors 6–13, ECF No. 12.) The undersigned

disagrees as to both contentions of error.

## II.     THE ALJ'S DECISION

On October 12, 2021, the ALJ issued a decision finding that Plaintiff was not disabled

within the meaning of the Social Security Act. (R. 13–25.) At step one of the sequential

evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity

since August 23, 2018, Plaintiff's alleged disability onset date. (*Id.* at 15.) At step two, the ALJ

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?
2.     Does the claimant suffer from one or more severe impairments?
3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

found that Plaintiff had the severe impairments of degenerative disc disease and multiple sclerosis. (*Id.* at 15–18.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except:
> - She can occasionally climb, stoop, kneel, crouch, and crawl.
> - She can frequently reach overhead with her bilateral upper extremities.
> - She must avoid all exposure to hazards.

(*Id.*) The ALJ then relied on the hearing testimony of a Vocational Expert ("VE") at steps four and five to conclude that Plaintiff was capable of performing her past relevant work as a residential apartment manager and cashier. The ALJ also concluded, based on the VE's testimony, that there are other jobs existing in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity could also perform, such as retail marker, photocopy machine operator, electrical accessories assembler, document preparer, addresser, and telephone solicitor. (*Id.* at 23–25.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 25.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security

---

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

as to any fact, if supported by substantial evidence, shall be conclusive . . . .”). While this standard “requires more than a mere scintilla of evidence, substantial evidence means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must “examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight” of the Commissioner's decision. *Golden Living Ctr.-Frankfort v. Sec'y Of Health And Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, where “substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.” *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, “a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.” *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.    ANALYSIS

Plaintiff raises two issues in her Statement of Errors: (1) the ALJ's RFC determination that Plaintiff could perform light work is not supported by substantial evidence; and (2) the ALJ erred in finding that Plaintiff does not have any severe mental impairments. (Pl.'s Statement of Errors 6–13, ECF No. 12.) The undersigned considers each contention of error in turn.

4

**A.** **The ALJ's conclusion that Plaintiff can perform light work is supported by substantial evidence.**

Plaintiff contends that the record demonstrates that she cannot stand for six hours per day, and therefore the ALJ erred in finding that Plaintiff could perform "light work" as defined by 20 C.F.R. § 404.1567(b). The undersigned disagrees.

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. § 404.1545(a)(1), (b)–(c). The determination of a claimant's RFC is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1546(c) ("the administrative law judge . . . is responsible for assessing your residual functional capacity.") Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010) (citing *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL 374184 (July 2, 1996). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must

5

also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted).

To be capable of performing a full or wide range of light work, a claimant must be capable of "a good deal of walking or standing." 20 C.F.R. 404.1567(b). More specifically, SSR 83-10 provides that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." 1983 WL 31251, at *6. Here, the ALJ concluded that Plaintiff could perform light work with the limitations that she could only occasionally climb, stoop, kneel, crouch, or crawl; that she could only frequently reach overhead with bilateral and upper extremities; and that she must avoid exposure to hazards. (R. 18.) The ALJ's conclusion that Plaintiff could perform light work under these conditions is supported by the opinions of the state agency reviewers at the initial and reconsideration level, who opined that Plaintiff could stand and/or walk for a total of about 6 hours in an 8-hour workday. (R. 85, 102.) The ALJ found the state agency reviewers' opinions to be generally persuasive because they are supported by the medical evidence and are consistent with Plaintiff's history of improved back pain following two lumbar fusions and a cervical fusion and stable multiple sclerosis. (R. 22.) The opinions of state agency reviewers constitute substantial evidence on which the ALJ may rely to craft the RFC. *See Hefflin o.b.o. LDS v. Kijakazi*, No. 1:20-cv-1414, 2021 WL 4477785, at *6 (N.D. Ohio Sept. 30, 2021) (collecting cases for the proposition that "State Agency opinions may constitute substantial evidence supporting an ALJ's decision"); *see also* 20 C.F.R. § 404.1513a(b) (ALJs are required to consider findings by state agency medical consultants). The ALJ further relied on Plaintiff's self-reports to her treating physician, in which she denied any significant back or leg symptoms following her back surgeries and reported that her multiple sclerosis was stable even after discontinuing Ocrevus infusion therapy for a year.

6

(R. 21, citing R. 1253, 1088.) Plaintiff's treating physician's treatment notes also reflect normal physical examination post-surgery. (R. 21, citing R. 1256.) The ALJ further noted that Plaintiff reported she was able to wash dishes, fold laundry, go out alone, shop in stores, and take her mother to the store. (R. 22.)

The ALJ's conclusion that Plaintiff could stand for 6 hours in an 8-hour workday, and thus could perform light work, was therefore supported by substantial evidence. Although Plaintiff cites her own self-reports and medical records documenting a diagnosis of degenerative disc disease and other back conditions culminating in surgery (citing R. 49, 347–49, 354, 358, 426, 584, 656, 661, 692–93, 770–71), "[t]he mere diagnosis . . ., of course, says nothing about the severity of the condition." *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988). Moreover, "an ALJ is not required to accept a claimant's subjective complaints." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Accordingly, the undersigned is not persuaded that remand is necessary in view of the countervailing record evidence upon which the ALJ relied. Rather, "there is a zone of choice within which the decision-makers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Emard*, 953 F.3d at 849 (where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion").

Finally, even if the ALJ had erred in concluding that Plaintiff could stand for up to 6 hours in an 8-hour workday, any error would be harmless. "[A]n agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." *Connor v. United States Civil Serv. Comm'n,* 721 F.2d 1054, 1056 (6th Cir. 1983). The

VE testified at the hearing that, even if Plaintiff were limited to sedentary work, she could still perform the document preparer, addresser, and telephone solicitor jobs relied on by the ALJ. (R. 58–59.) Accordingly, any error by the ALJ in evaluating Plaintiff's ability to stand was harmless.

**B.      The ALJ appropriately considered Plaintiff's mental impairments in crafting the RFC.**

Plaintiff next contends that the ALJ erred in failing to find at step two of the sequential evaluation process that Plaintiff's mental impairments were severe. Plaintiff further contends that such failure is not harmless because the ALJ failed to consider Plaintiff's mental impairments in crafting Plaintiff's RFC. Again, the undersigned disagrees.

At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has construed a claimant's burden at step two as "a *de minimis* hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). The inquiry is therefore "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id*. at 863 (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)). A severe impairment is defined as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months," 20 C.F.R. §§ 404.1509, 416.909.

"The fact that some of a claimant's impairments were not deemed to be severe at step two is legally irrelevant where other impairments are found to be severe." *Emard*, 953 F.3d at 852

(cleaned up); *see also Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003)

(where the ALJ determines that a claimant has a severe impairment at step two of the analysis,

"the question of whether the ALJ characterized any other alleged impairment as severe or not

severe is of little consequence"). Instead, the pertinent inquiry is whether the ALJ considered the

"limiting effects of all [the claimant's] impairment(s), even those that are not severe, in

determining [the claimant's] residual functional capacity." 20 C.F.R. §§ 404.1545(a)(2), (e); 20

C.F.R. §§ 416.945(a)(2), (e). *See also Pompa*, 73 F. App'x at 803 (rejecting the plaintiff's

argument that the ALJ erred by finding that a number of her impairments were not severe where

the ALJ determined that plaintiff had at least one severe impairment and considered all of the

plaintiff's impairments in her RFC assessment); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837

F.2d 240, 244 (6th Cir. 1987) (same).

Here, the ALJ determined that Plaintiff has one or more severe impairments, but declined

to include Plaintiff's medically determinable mental impairments of depression and anxiety

among them. (R. 16.) The question now before the Court is whether the ALJ appropriately

considered any limiting effects caused by Plaintiff's depression and anxiety in assessing

Plaintiff's RFC. The undersigned concludes that she did. The administrative decision reflects that

the ALJ considered Plaintiff's self-reports, her neurologist's treatment records, a consultative

psychological examination, and the state agency reviewers' opinions in crafting the RFC.

First, the ALJ considered Plaintiff's neurologist's mental status examinations, which

generally reflected normal mood and affect, intact comprehension, intact fluency, intact naming,

normal cognition, and an intact fund of information. (R. 16–17, citing R. 359, 365, 584, 671,

690, 712, 723.)

9

The ALJ then considered the psychological evaluation of Ryan Wagner, Psy.D., a consulting examiner. Dr. Wagner opined that Plaintiff had no difficulty in understanding or remembering instructions, but opined that cognitive testing "suggest[ed] some difficulty in maintaining attention and focus," and noted Plaintiff's self-reports of problems with attention and concentration that "may affect her ability to complete tasks in a timely and effective manner"; noted that Plaintiff "described potential impacts of mental health problems on work performance which may lead to emotional instability when presented with critical supervisory feedback and difficulty developing and maintaining appropriate coworker relationships"; and noted that Plaintiff described "depressive symptoms that may compromise her ability to respond to work pressures and lead to increased emotional instability and withdrawal" and "anxious symptoms that may compromise her ability to respond to work pressures and lead to increased likelihood of agitation and experiences of anxiety attacks." (R. 590–91.) The ALJ found Dr. Wagner's opinion to be partially persuasive. (R. 17.) The ALJ found Dr. Wagner's opinion that Plaintiff did not have difficulty understanding or remembering instructions was supported by cognitive testing performed at the evaluation. (*Id.*) However, the ALJ concluded that Dr. Wagner's findings did not support limitations in attention, as Plaintiff was able to perform serial 7 and serial 3 subtractions. (*Id.*) Further, the ALJ determined that Dr. Wagner's opined limitations on coworker relationships and responding to work pressures were not supported by his generally normal mental status examination findings including cooperative behavior, adequately established rapport, clear and logical thought processes, and average intelligence. (*Id.*) The ALJ also found these limitations inconsistent with other mental status examinations by Plaintiff's neurologist, which reflect no mental status deficits. (*Id.*) The ALJ further found Dr.

10

Wagner's opined limitations to be inconsistent with Plaintiff's lack of mental health treatment.

(*Id.*)

The state agency reviewers, Michael E. Cremerius, Ph.D., and Deryck Richardson, Ph.D.,

opined that Plaintiff was limited in aspects consistent with Dr. Wagner's opinion. (R. 87–89,

104–06.) As to the "paragraph B" criteria,[4] they opined that Plaintiff had moderate limitations in

interacting with others and in concentration, persistence, and pace, and that Plaintiff had mild

limitations in understanding, remembering, or applying information and in adapting or managing

oneself. (*Id.*) More specifically, they opined that Plaintiff had moderate limitations in her ability

to understand, remember and carry out detailed instructions, maintain attention and concentration

for extended periods, work in coordination with or in proximity to others without being

distracted by them, interact appropriately with the general public, accept instructions and respond

appropriately to criticism from supervisors, get along with coworkers or peers without distracting

them or exhibiting behavioral extremes, and respond appropriately to changes in the work

setting. (*Id.*) They opined that the claimant is capable of performing simple and detailed tasks,

occasional contact with coworkers, supervisors, and the public, and to adapt to typical changes in

the workplace, and that that she could not perform fast paced tasks with strict production quotas.

(*Id.*) The ALJ found the state agency reviewers' opinions to be unpersuasive because they were

"not supported by their explanation." (R. 18.) The ALJ stated that the state agency reviewers

"relied only on [Dr. Wagner's] consultative examination and did not address the other normal

mental status examination findings of record" or Plaintiff's "lack of mental health treatment."

(*Id.*) Ultimately, the ALJ found at step two that Plaintiff's mental impairments to be non-severe

---

[4] The four aspects of mental functioning are referred to as the "paragraph B criteria," as they appear in paragraph B of many Listings involving mental impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2)(b).

because her depression and anxiety do not cause "more than minimal limitation in [her] ability to perform basic mental work activities" and found at step four that any mental health RFC limitations would be inconsistent with the absence of any mental health treatment in the record and Plaintiff's generally normal mental status examinations. (R. 16, 22.)

In sum, although the ALJ did not include any mental limitations in Plaintiff's RFC, she thoroughly considered the mental health evidence of record and explained her reasons for declining to adopt Dr. Wagner's or the state agency reviewers' opined limitations. The undersigned therefore is not persuaded by Plaintiff's assertion that "the ALJ simply disregarded [Plaintiff's] mental limitations after determining that they were non-severe." (Statement of Errors 12, ECF No. 12.)

Nor is Plaintiff's argument that the ALJ substituted her own lay opinion for that of medical experts availing. (*Id.* at 10.) The ALJ, not medical sources, has the final responsibility for deciding issues like residual functional capacity. 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.") The regulations do not require an ALJ to rely solely upon medical opinions when formulating a residual functional capacity, but instead explicitly require an ALJ to evaluate medical opinions based on their supportability, with reference to objective medical evidence and supporting explanations, and their consistency with other medical and non-medical source evidence. 20 C.F.R. § 1520c(c)(1)–(2). Indeed, as the Sixth Circuit has held, physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994). Further, "[a]n ALJ does not improperly assume the role of a medical expert by

weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010); *see also Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (upholding Commissioner's decision where plaintiff "contend[ed] that an ALJ may not make a work-capacity finding without a medical opinion that reaches the same conclusion," finding "the premise" of that position "is wrong").

Contrary to Plaintiff's assertions, the ALJ did not impermissibly use her own opinion instead of the medical opinions in the record. Rather, the ALJ properly considered and weighed the opinions and evidence in the record when crafting the RFC. Accordingly, the undersigned finds the RFC is supported by substantial evidence.

## V.    DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, for the foregoing reasons, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.


        **IT IS SO ORDERED.**


                                         /s/ *Chelsey M. Vascura*
                                         CHELSEY M. VASCURA
                                         UNITED STATES MAGISTRATE JUDGE